UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BARKETT et al., | Case No.: 1:14-cv-01698 - LJO - JLT |
| Plaintiffs, | ORDER DENYING DEFENDANT'S MOTION FOR A CHANGE OF VENUE |
| v. | (Doc. 3) |
| SENTOSA PROPERTIES LLC, et al., | |
| Defendants. | |

Defendant Sentosa Properties, LLC seeks a change of venue to the Southern District of California. (Doc. 3). Plaintiffs William Barkett; Monterey Financial Advisors, LLC; Parker Dam Development; Wasco Investments, LLC; and Barusa, LLC filed their opposition to the motion on November 17, 2014 (Docs. 12-13), to which Defendant filed a reply on November 24, 2013 (Doc. 14). The Court heard the oral arguments of the parties on December 1, 2014. For the reasons set forth below, Defendant's motion for a change of venue is **DENIED**.

I.      **Factual and Procedural History**

Plaintiffs report they "owned certain real property located in Kern County just north of State Highway 46 within the city limits of Wasco, California (the 'Subject Property')." (Doc. 12 at 2.) According to Plaintiffs, "Wasco Investments acquired the Subject Property in 2007 in anticipation of obtaining new zoning and entitlements to change the Subject Property from farming uses to mixed use commercial." (*Id.*) Plaintiffs assert that Wasco Investments "obtained two loans from Defendant WF

Capital, Inc.," which "were secured by the Subject Property and personally guaranteed by Plaintiff William Barkett and his wife Lisa Barkett." (*Id.*; *see also* Doc. 1 at 17, ¶¶13-14.) Defendant Sentosa Properties was assigned the beneficial interests in the loans in 2008. (*Id.*; Doc. 1 at 17-18, ¶17.)

Plaintiffs allege that in 2009, "Wasco Investments entered into an agreement to sell a portion of the development to WalMart." (Doc. 1 at 17, ¶ 16.) As part of this transaction, "approximately $3 million was paid to WF Capital, Inc. in exchange for a release of any security interests in the portion of the property sold to WalMart." (*Id.*)

Plaintiffs allege that in September 2009, "Plaintiffs and WF Capital entered into a Forbearance Agreement regarding the obligations contended by WF Capital to be owed on the Subject Property." (Doc. 1 at 18, ¶ 18.) According to Plaintiffs, they relied upon the agreement and "continued their efforts to obtain entitlements and zoning . . . and to move forward with development of the Subject Property." (*Id.*, ¶¶ 18-19.) Further, Plaintiffs allege they "agreed to forgo the opportunity to file a bankruptcy petition to seek reorganization of the debt on the Subject Property and to protect their investment." (*Id.*, ¶ 19.)

Despite the forbearance agreement, in 2010, "WF Capital filed suit in Washington State against Plaintiff Barkett and his wife Lisa Barkett seeking a judgment on the guarantees." (Doc. 1 at 18, ¶ 20.) The court entered judgment against the Barketts, "and the judgment was filed in California." (*Id.*) Plaintiffs assert that despite the entry of judgment, they "entered into a Second Forbearance Agreement on June 26, 2011," with WF Capital. (*Id.*, ¶ 21.) Plaintiffs allege the same parties "entered into an Amendment to the Second Forbearance Agreement" with Defendant Sentosa. (*Id.*) Plaintiffs contend that "[t]he parties agreed to specific reduced amounts that were due under the terms of the various loan documents and judgments," and Plaintiffs again "agreed to refrain from seeking relief from the bankruptcy courts." (*Id.*) Plaintiffs assert the defendants "agree[d] to forebear from any action to foreclose on the Subject Property or attempt to enforce the judgments." (*Id.*, ¶ 25.)

Plaintiffs assert the agreed upon deadlines in the Amended Second Forbearance Agreement were not met, but "Defendant Senstosa took no action to enforce its judgments or to otherwise exercise any of its claimed rights under the loan documents or the judgments … because … the parties continued to work together toward the development of the Subject Property." (Doc. 1 at 18-19, ¶ 22.)

According to Plaintiffs, "[w]ith Defendants (sic) knowledge Plaintiffs paid hundreds of thousands of dollars on . . . consultants and engineers over the time period of 2007 to the present," and they "were successful in getting approval of a tentative map and of selling one parcel to Wal-Mart." (*Id.*, ¶ 24.)

Plaintiffs allege they negotiated an Improvement Agreement and a Tax Sharing Agreement with the City of Wasco related to the Subject Property in April 2014, under which "Plaintiffs would receive a credit of $750,000 and the remaining amount of the site improvement costs would be borne by the City initially and allocated via assessment on the Subject Property." (Doc. 1 at 19-20, ¶ 26.) However, during the course of obtaining the Improvement Agreement, "the City of Wasco became concerned that there were liens of record against the Subject Property that either needed to be removed or that needed to agree to subordinate rights of the City of Wasco as developed under the Improvement Agreement." (*Id.* at 20, ¶ 28.) Plaintiffs assert Defendants Sentosa and Huang were aware of the agreement with the City of Wasco, "participated at all times in the negotiations and agreed to, and did, execute Subordination Agreements and Petitions and Waivers relating to the Assessment District that was created thereby." (*Id.*, ¶ 26.)

According to Plaintiffs, Defendants Sentosa and Huang "entered into an agreement that Sentosa would conduct a non-judicial foreclosure in the second position in order to eliminate any of the liens of record junior to that lien." (Doc. 1 at 20, ¶ 28.) Plaintiffs assert that under the alleged agreement: "Defendants would grant to Plaintiffs or their assignee an Option to re-acquire the Subject Property for a specified price and agree to permit Plaintiffs, at Plaintiffs' expense, to continue to process the development. No foreclosure would take place until the Option was in place." (*Id.* at 20-21, ¶ 28.) Plaintiffs allege, however, that "Defendants proceeded to complete a nonjudicial foreclosure sale of the Subject Property without any warning to Plaintiffs." (*Id.* at 22, ¶ 34.)

Plaintiffs filed a complaint in Kern County Superior Court on August 20, 2014, asserting the defendants are liable for fraud and breach of contract, and seeking declaratory relief, including a determination "that there is no longer any amounts owed on the loans or the judgments." (Doc. 1 at 15, ¶¶ 23-28) and that "Plaintiffs hold an option to purchase the Subject Property." *Id*. at 28. Sentosa filed a Notice of Removal on October 29, 2014, thereby initiating the action in this Court. (Docs. 1-2.) On October 30, 2014, Sentosa filed the motion for a change of venue now pending before the Court,

3

asserting the Southern District of California is the proper venue for adjudication of Plaintiffs' claims. (Doc. 3.)

## II. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Supreme Court explained the § 1404(a) analysis should be an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). Accordingly, courts consider several factors, including:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)); *see also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

The party seeking a change of venue has the burden to demonstrate the transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Whether to grant a change of venue is within the discretion of the District Court. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) (explaining the determination of the proper venue "involves subtle considerations and is best left to the discretion of the trial judge").

## III. Discussion and Analysis

### A. Convenience of the parties

Evaluating the parties' convenience, the Court considers Plaintiffs' choice of forum, the parties' contacts with the forum, and the contacts relating to Plaintiffs' claims in the chosen forum. *Jones v. GNC Franchising*, 211 F.3d 495, 498-99 (9th Cir. 2000), *cert. denied,* 531 U.S. 928 (2000). The Ninth Circuit explained the Court "must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Jones*, 211 F.3d at 498. In general, a plaintiff's choice of forum is given substantial weight, because courts attach a "strong presumption in favor of [the] plaintiff's choice of forum." *Piper Aircraft v. Reyno* 454 U.S. 235, 255 (1981); *Decker*

*Coal*, 805 F.2d at 843. However, the deference accorded to a plaintiff's choice of forum may be lessened in certain circumstances. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

In *Lou* the Ninth Circuit instructed: "In judging the weight to be accorded [the plaintiff's] choice of forum, consideration must be given to the extent of both [the plaintiff's] and the [defendant's] contacts with the forum, including those relating to [the plaintiff's] cause of action." *Id*., 834 F.2d at 739 (citing *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)). A plaintiff's choice "is entitled to only minimal consideration" if the Court finds "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." *Id.*

Here, the case was filed originally in Kern County Superior Court, which is encompassed within the Eastern District. (Doc. 1.) However, Sentosa reports that "[t]he Plaintiffs all reside and are organized or incorporated in La Jolla, California, San Diego County, in the Southern District." (Doc. 3-1 at 5.) Further, Sentosa asserts: "the loans were all executed by Plaintiffs in La Jolla, California; the Guarantees were executed in San Diego County, California; Wasco, Parker Dam, Barusa, William Barkett, and Lisa Barkett executed the Forbearance Agreements in San Diego, California; the Judgment was registered in San Diego County where all of the Plaintiffs reside; and the Judgment is being enforced by the Southern District of California." (*Id.* at 12.) Thus, Sentosa concludes that "**all**** of the key events that gave arise to this action occurred within the Southern District." (*Id.*, emphasis in original.)

Plaintiffs maintain that the Eastern District is an appropriate venue "because the Subject Property is there." (Doc. 12 at 5.) Plaintiffs assert that they elected to file within the Eastern District due to the location of the Subject Property. (*Id.*) Further, Plaintiffs assert, "[m]ost, if not all, of the events surrounding the issue[s] took place in Kern County. (*Id.* at 6.)

Notably, the complaint indicates that part of the fraud claim is based upon Defendants' actions related to the negotiation of the Improvement Agreement according to which Plaintiffs agreed to give up their claims under the Tax Sharing Agreement in exchange for Wasco fronting much of the infrastructure development costs. (Doc. 1 at 25) Plaintiffs allege that Defendants participated in the negotiation of the Improvement Agreement and were fully aware of its requirements. *Id*. at 19-20 ¶ 26. The complaint alleges further that Defendants executed "Subordination Agreements and Petitions and

Waivers" related to the formation of the assessment district that was formed to recoup the cost of the infrastructure improvements that would be paid by the City of Wasco. *Id*. at 20 ¶ 27. Meanwhile, the City of Wasco negotiated with WalMart to execute a similar agreement to the one entered into by Plaintiffs and the City of Wasco. *Id.* at 21 ¶ 30. Counsel for Defendants participated in the negotiations with WalMart. *Id*. During this time, Plaintiffs also were in process of obtaining an amended map that would allow the sale of individual parcels. *Id*. at 31. Defendants approved the proposed map and were aware that Plaintiffs were engaged in negotiating the sale of the parcels. *Id*. Plaintiffs contend that the acts by Defendants in these negotiations induced them to continued forward toward development of the property and spend considerable money for the purpose of best positioning Defendants to seize the property—and the benefits of Plaintiffs' efforts and money—through foreclosure of the property. *Id.* at 24-25.

Though Defendants characterize this current action as one that relates only to the failed third forbearance agreement the allegations set forth above include claims related to the Improvement Agreement, the efforts related to drafting the new map and the efforts to secure the improvements on the WalMart property which would benefit the subject property. In doing so, Defendants fail to support that these actions occurred in the Southern District. Indeed, it seems unlikely that the City of Wasco's actions occurred anywhere other than in the City of Wasco.

Given the allegations in the complaint, it appears the chosen forum maintains contacts relating to Plaintiffs' claims, and Plaintiffs' choice of forum is entitled to more than minimal consideration. Thus, Defendants have not carried their burden to demonstrate that the Southern District is a more convenient forum for the parties.

### B.   Convenience of the witnesses

Convenience for witnesses is one of the most important factors in the determination of whether to grant a change of venue. *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981). A transfer of venue "may be denied when witnesses either live in the forum district or are within the 100-mile reach of the subpoena power" because individuals cannot be compelled to testify when they reside beyond the boundaries of the Court's subpoena power." *Id.* at 501 (citing Fed. R. Civ. P. 45(e); *U.S. Industries, Inc. v. Procter & Gamble Co.*, 348 F. Supp. 1265

(S.D.N.Y. 1972)). Consequently, to show inconvenience for witnesses, "the moving party should state the witnesses' identifies, locations, and content and relevance of their testimony." *Meyer Mfg. Co. Ltd. v. Telebrands Corp.*, 2012 WL 1189765 at *6 (E.D. Cal. 2012) (citing *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092-93 (N.D. Cal. 2002); *see also E. & J. Gallo Winery v. F. & P. S.p.A.,* 899 F. Supp. 465, 466 (E.D. Cal. 1994) ("[a]ffidavits or declarations are required to identify key witnesses and a generalized statement of their anticipated testimony").

Sentosa asserts "key witnesses are located in the Southern District" and other "witnesses can easily travel to the Southern District." (Doc. 3-1 at 9.) Plaintiffs assert the convenience of witnesses weighs against a transfer of venue because "[t]he City of Wasco and all of its representatives, including legal counsel, Thomas Schroeter, reside in Kern County." (Doc. 12 at 6.) Though it is not explained what relevant evidence may be provided from representatives of the City of Wasco or its counsel, Sentosa fails to meet its obligation to "identify relevant witnesses, state their location and describe their testimony and its relevance" to demonstrate inconvenience of non-party witnesses. *Williams v. Bowman*, 157 F. Supp. 3d 1103. 1108 (N.D. Cal. 2001); *see also E. & J. Gallo Winery,* 899 F. Supp. at 466. Thus, Defendant has not demonstrated non-party witnesses would suffer inconvenience, and this factor does not support a change in venue.

C. **Interest of Justice**

"Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the University of California v. Eli Lilly and Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (citation omitted). Evaluating the interest of justice, the Court considers the ease of access to evidence; familiarity of the forums with the applicable law; and the differences in litigation in each forum, including court congestion and time of trial. *Burke v. USF Reddaway, Inc.*, 2013 U.S. Dist. LEXIS 3074, at *15 (E.D. Cal. Jan. 8, 2013) (citing *Jones*, 211 F.3d at 498-99). Also, the Court may consider the existence of a pending related action in the forum to which transfer has been proposed. *Amazon.com v. Cendant Corp.*, 404 F.Supp.2d 1256, 1259 (W.D. Wash. 2005).

a. <u>Ease of access to evidence</u>

Sentosa has not identified any specific evidence that is located in the Southern District. Even if the Court presumes that the evidence related to the alleged agreements would be located where the negotiations of the forbearance agreements occurred, Defendants have failed to prove, as discussed above, only occurred in the Southern District. It appears that evidence related to the Improvement Agreement and the amended property map may be located in Kern given the allegations of the complaint that indicated that officials with the City of Wasco were heavily involved at least to the extent that these negotiations were informed by and motivated in part by the Improvement Agreement negotiated with the City of Wasco. Thus, Defendants have failed to meet their burden of proof that venue should be changed based upon this factor.

### b. Pendency of a related action

The Supreme Court explained: "To permit a situation in which two cases involving precisely the same issues *are simultaneously pending* in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) (emphasis added). Thus, the Ninth Circuit has determined that "the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *A. J. Indus.*, 503 F.2d at 389.

Significantly, here, there is no active, ongoing case in the Southern District.[1] That court has entered the abstract of judgment and has issued an order assigning Plaintiff's interest in assets held in the Southern District to Defendants toward the goal of satisfying the judgment and charging Plaintiff's interest in Wasco Investments, LLC with the unpaid judgment.[2] The Southern District had no occasion to consider the merits of the current action or, even, the one in the Western District of Washington.

///

---

[1] The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201. The accuracy of a court's records cannot reasonably be questioned, and judicial notice may be taken of court records. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n. 9 (9th Cir.1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), aff'd 645 F.2d 699 (9th Cir.1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir.1989). Thus, the Court takes judicial notice of the actions taken in the matter of *Sentosa Properties, LLC., v. Wiliam J. Barkett and Lisa Barkett*, Case No. 14-cv-1622 L (JLB) filed in the Southern District of California.

[2] Notably, this included assignment of any monies collected by Wasco Investments according to the Tax Sharing Agreement which is at issue in this litigation.

    c.  Familiarity of the forums with applicable law

Both the Southern District and Eastern District Courts will be equally familiar with California law. As a result, this factor does not weigh in favor of a change in venue.

    d.  Court congestion in each forum

The Court must consider "the administrative difficulties flowing from court congestion" when considering the interest of justice. *Decker Coal*, 805 F.2d at 843 (citing *Piper* Aircraft, 454 U.S. at 255). The judges in this Court maintain the busiest dockets in the nation. Data for the twelve-month period ending June 30, 2014, indicates the median time interval between filing of a document and any court action was 3.1 months in the Southern District and 5.9 months in the Eastern District. United States Courts, "Table C-5: Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition," available at http://www.uscourts.gov/Statistics/StatisticalTables ForTheFederalJudiciary/june-2014.aspx (last visited November 25, 2014). Although civil cases move through the Court in a timely manner, recognizing the congestion in this Court, this factor weighs in favor of transfer to the Southern District.

## IV. Conclusion and Order

Based upon the foregoing, the Defendant has not carried the burden to demonstrate the transfer is required. *See Commodity Futures Trading Comm'n*, 611 F.2d at 279. Defendant has not shown the convenience of the parties or witnesses weigh in favor or a transfer. Further, despite the significant congestion of cases faced by this Court, Defendant has not established that the interests of justice weigh in favor of a change of venue. Accordingly, **IT IS HEREBY ORDERED**: Defendant's motion for a change of venue (Doc. 3) is **DENIED**.

IT IS SO ORDERED.

 Dated: **December 4, 2014**     **/s/ Jennifer L. Thurston**
                       UNITED STATES MAGISTRATE JUDGE