# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

WILLIAM BARKETT, MONTEREY
FINANCIAL ADVISORS LLC; PARKER
DAM DEVELOPMENT; WASCO
INVESTMENTS LLC; BARUSA LLC,

     Plaintiffs,

  v.

SENTOSA PROPERTIES LLC; ARNOLD
HUANG; ELIZABETH HUANG;
EUGENE WONG; WF CAPITAL, INC.;
DOES 1 TO 25,

     Defendants.

Case No. 1:14-cv-01698-LJO-JLT

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS, GRANTING
MOTION TO RECONSIDER MOTION TO
QUASH RE PERSONAL JURISDICTION,
AND DISMISSING AS MOOT THE
REQUESTS FOR RECONSIDERATION RE
VENUE.

(Docs. 1,  9, 19, 24, 44)

Before the Court in the above-styled and numbered cause of action are Defendant Sentosa

Properties LLC's ("Sentosa") Motion to Dismiss, filed November 5, 2014 (Doc. 9), Defendant WF

Capital, Inc.'s ("WF Capital") Motion to Dismiss, and its accompanying Request for Judicial

Notice, filed December 1, 2014 (Docs. 19, 19-3), Sentosa's "Request for Reconsideration by the

District Court of the Magistrate Judge's Order Denying Sentosa's Motion for a Change of Venue,"

filed December 18, 2014 (Doc. 24), and Defendants Eugene Wong, Arnold Huang, and Elizabeth

Huang's "Request for Reconsideration by the District Court of Magistrate Judge's Amended Order

Denying Motion to Quash," filed January 20, 2015 (Doc. 44).  The Court concludes that the matters

are appropriate for determination without oral argument.  *See* Local Rule 230(g).  The Court,

having considered the record in this case, the parties' briefing, and the relevant law, will grant

Defendants' motions to dismiss Plaintiff's Complaint as well as the reconsideration request related

to jurisdiction, but will dismiss as moot the reconsideration request related to venue.

1

I.      **BACKGROUND**

A.  **Allegations in the Operative Complaint[1]**

Plaintiff William Barkett ("Barkett") is an individual residing in San Diego County, California. *See* Complaint ("Compl."), Doc. 1 ¶ 1.  Plaintiffs Monterey Financial Advisors LLC ("Monterey") and Barusa LLC ("Barusa") are California limited liability companies with their respective principal places of business in San Diego County, California. Compl. ¶¶ 2, 5.  Parker Dam Development ("Parker Dam") and Wasco Investments LLC ("Wasco") are California limited liability companies with their respective principal places of business in Kern County, California. *Id.* ¶¶ 3, 4.

Defendant Sentosa is a Washington State limited liability company, with its principal place of business in Washington State. *Id.* ¶ 6.  Sentosa purports to be the successor in interest to the rights of Defendant WF Capital. *Id.* ¶ 7.  WF Capital is a Washington corporation, with its principal place of business in Washington State. *Id.* ¶ 6.  Individual Defendants Arnold Huang ("Huang") and Elizabeth Huang (together, "the Huangs") are residents of the State of Washington and principals of Sentosa. *Id.* ¶¶ 8, 9.  Defendant Eugene Wong ("Wong"), an individual and resident of the State of Washington, is an attorney and acted as the agent for Defendants Sentosa and the Huangs. *Id.* ¶ 10.

Plaintiffs' claims arise out of various loans by Defendant WF Capital to Plaintiffs Parker Dam, Wasco, and Barusa in order to purchase and develop real property ["the Property"] near the City of Wasco ("the City").  *See, generally,* Compl.  Plaintiffs contend that they are "owners of certain real property located in the County of Kern near Wasco." *Id.* ¶ 12.  There are three loans involved.  To purchase and develop the Property, Plaintiff Wasco sought and obtained two separate loans from Defendant WF Capital, both of which were secured by the Property and personally

---

[1] The Court takes the factual background from the facts as alleged in Plaintiffs' Complaint (Doc. 1), unless otherwise noted.  In analyzing claims under Federal Rule of Civil Procedure 12(b)(6), the Court assumes that all material facts alleged in the complaint are true. *Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010).

guaranteed by Barkett and his wife, Lisa Barkett (together, "the Barketts"). *Id.* ¶ 12-14.  In addition, Parker Dam sought and obtained from WF Capital a separate loan, likewise secured with the Property and personally guaranteed by the Barketts.[2] *Id.* ¶ 15.

Sometime in 2009, Plaintiff Wasco Investment agreed to sell a lot in the development to Wal-Mart. *Id.* ¶ 16.  As part of this transaction, Plaintiffs paid "approximately $3 million" to WF Capital, Inc. in exchange for a release of any security interests in the portion of the property sold to WalMart." *Id.*  Despite accepting the $3 million, Plaintiff contends that WF Capital "never released the . . . deed of trust as agreed." *Id.*

By September 2009, Plaintiffs had defaulted on all Loans, but instead of foreclosing on the Property after default, WF Capital entered into a forbearance agreement (the "First Forbearance Agreement" or "FFA") with the Plaintiffs. *Id.* ¶ 19.  According to Plaintiff, the First Forbearance Agreement related to "the obligations contended by WF Capital to be owed on the Subject Property." *Id.* ¶ 18.  And, in reliance upon the FFA, Plaintiffs "continued their efforts to obtain entitlements and zoning . . . and to move forward with development of the Subject Property." *Id.* ¶¶ 18-19.  Further, Plaintiffs contend that they "agreed to forgo the opportunity to file a bankruptcy petition to seek reorganization of the debt on the Subject Property and to protect their investment." *Id.* ¶ 19.

In 2010, despite the existing FFA, "WF Capital filed suit in Washington State against the Barketts seeking a judgment on the guarantees." *Id.* ¶ 20.  The court entered judgment against the Barketts, "and the judgment was filed in California." *Id.*  Despite the adverse judgment, WF Capital "entered into a Second Forbearance Agreement," with Plaintiffs on June 26, 2011. *Id.* ¶ 21.

At some point soon after June 26, 2011, WF Capital assigned its beneficial interests in the loans to Sentosa. *Id.* ¶¶ 17, 21, 28.  In June 2011, Plaintiffs allege the same parties, now also

---

[2] For clarity, the Court will hereinafter refer to the three loans, collectively, as "the Loans."

including Sentosa, "entered into an Amendment to the Second Forbearance Agreement" ("the Amendment"). *Id.* Plaintiffs contend that "[t]he parties agreed [in the Amendment] to specific reduced amounts that were due under the terms of the various loan documents and judgments," and Plaintiffs again "agreed to refrain from seeking relief from the bankruptcy courts." *Id.* Plaintiffs assert that the Defendants "agree[d] to forebear from any action to foreclose on the Subject Property or attempt to enforce the judgments." *Id.* ¶ 25.

Plaintiffs did not meet the Amendment's payment deadlines. *Id.* ¶ 22. Even so, "Defendant Sentosa took no action to enforce its judgments or to otherwise exercise any of its claimed rights under the loan documents or the judgments . . . because . . . the parties continued to work together toward the development of the Subject Property." *Id.* Plaintiffs argue that as a result and with "Defendants['] knowledge," they spent significant sums on "consultants and engineers over the time period of 2007 to the present," and "were successful in getting approval of a tentative map and of selling one parcel to Wal-Mart." *Id.* ¶ 24.

In April 2014, Plaintiffs were negotiating with the City for an Improvement and a Tax Sharing Agreement (the "Tax Sharing Agreement") related to the Property, under which "Plaintiffs would receive a credit of $750,000 and the remaining amount of the site improvement costs would be borne by the City initially and allocated via assessment on the Subject Property." *Id.* ¶ 26. During negotiations, however, the City "became concerned that there were liens of record against the Subject Property that either needed to be removed or that needed to agree to subordinate rights of the City of Wasco as developed under the Improvement Agreement." *Id.* ¶ 28. Plaintiffs contend that Defendants Sentosa and Arnold Huang were aware of the negotiations with the City and "participated at all times in the negotiations and agreed to, and did, execute Subordination Agreements and Petitions and Waivers relating to the Assessment District that was created thereby." *Id.* ¶ 26.

Plaintiffs emphasize that subsequent to the City having expressed its concerns about the liens and subordination, *see id.* ¶ 28, Defendants Sentosa and Arnold Huang verbally agreed to, although did not execute in writing, a third forbearance agreement ("the Oral Third Forbearance Agreement") precluding the conduct about which Plaintiffs complain *Id.*  Specifically, Plaintiffs allege that:

> Since Defendant Sentosa, by assignment from WF Capital, held the beneficial interest in at least three of the senior liens, Plaintiffs, acting through [Barkett], and Defendant Sentosa, acting through its principals, Defendants Huang and its other principals Does 1 to 5 and Defendant's legal counsel Eugene Wong, entered into an agreement that Sentosa would conduct a non-judicial foreclosure of the lien in the second position in order to eliminate any of the liens of record junior to that lien.  In exchange for that non-judicial foreclosure, Defendants would grant to Plaintiffs or their assignee an Option to re-acquire [the Property] for a specified price and agree to permit Plaintiffs, at Plaintiffs' expense, to continue to process the development.  No foreclosure would take place until the Option was in place.

*Id.* ¶ 28.

Plaintiffs further contend that, "at their request":

> On or about April 24, 2014, the parties had reached a final version of [the Oral Third Forbearance Agreement] that included the Option to Purchase granted to Plaintiff[s] Monterey Financial Advisors, LLC. . . .  All of the terms were agreed to and Plaintiffs were prepared to execute the agreement and indicated to Defendants that they would do so.  At the very last minute, Defendants attempted to change the terms of the initial Option payment and demanded that Plaintiffs agree to this new term.  The new term was not part of [the proposed Third Forbearance Agreement].

*Id.* ¶ 33.

Despite the alleged existence of favorable option terms in the Oral Third Forbearance Agreement, Plaintiffs allege that, "Defendants proceeded to complete a nonjudicial foreclosure sale of the Subject Property without any warning to Plaintiffs." *Id.* ¶ 34.

### B.  Procedural History

Plaintiffs Barkett, Monterey Financial, Parker Dam, Wasco, and Barusa (collectively, "Plaintiffs") commenced this action on August 20, 2014, by filing a Complaint in the California Superior Court for the County of Kern against Defendants Sentosa, WF Capital, Wong, and the

5

Huangs (collectively "Defendants"). *See generally*, Compl., Doc. 1.  Plaintiffs assert that Defendants are liable for fraud and breach of contract, and seek declaratory relief, asking for a determination "that there is no longer any amounts owed on the loans or the judgments," (*id.* ¶¶ 23-28), and that "Plaintiffs hold an option to purchase the Subject Property." *Id*. at 28.

On October 10, 2014, Specially Appearing Defendants Eugene Wong, Arnold Huang, and Elizabeth Huang (collectively, "the Individual Defendants") filed a Motion to Quash Service of Summons and Complaint for Lack of Personal Jurisdiction in California Superior Court for the County of Kern (Doc. 1-4, p. 38).

On October 29, 2014, Defendant Sentosa removed to this Court pursuant to the provisions of 28 U.S.C. Sections 1332(a) and 1441(b), asserting that the parties are diverse and the matter in controversy exceeds the sum of $75,000. *See* Docs. 1-2.  On October 30, 2014, Sentosa next filed a motion for change of venue on the basis of previous litigation related to enforcing the judgment against the Plaintiffs in the Southern District of California, making that district the proper venue for adjudication of Plaintiffs' claims (Doc. 3).

On November 25, 2014, the U.S. Magistrate Judge rendered an Order denying the Individual Defendants' Motion to Quash Service of Summons and Complaint for Lack of Jurisdiction (Doc. 16).  On December 5, 2014, the Magistrate Judge rendered an Order denying Defendant Sentosa's Motion for a Change of Venue (Doc. 21).

On December 9, 2014, Defendants Eugene Wong, Arnold Huang, and Elizabeth Huang filed their Request for Reconsideration by the District Court of Magistrate Judge's Order Denying Motion to Quash Service of Summons and Complaint for Lack of Jurisdiction (Doc. 22), arguing legal and factual defects.  On December 18, 2014, Defendant Sentosa requested reconsideration of an Order from the Magistrate Judge as to change of venue (Doc. 24).  Plaintiffs filed multiple responses to the requests for reconsideration (Docs. 25, 29, 31).

On January 6, 2015, the Magistrate Judge rendered an Amended Order, again denying Defendants' motions to quash service and complaint for lack of jurisdiction (Doc. 33).  On January 20, 2015, Defendants Eugene Wong, Arnold Huang, and Elizabeth Huang again filed a Request for Reconsideration by the District Court of Magistrate Judge's Amended Order Denying Motion to Quash Service of Summons and Complaint for Lack of Jurisdiction (Doc. 44).  Plaintiffs filed their reply on January 30, 2015 (Doc. 50).

Sentosa moved to dismiss the Complaint on November 5, 2014 (Doc. 9), and WF Capital followed on December 1, 2014 (Doc. 19).  On January 8, 2015, Plaintiffs filed their Oppositions to the motions (Doc. 35 & 38), in which they principally objected to Defendants' contention that Plaintiffs' claims are not well pleaded.  Defendant Sentosa filed its reply on January 15, 2015 (Doc. 41), as did WF Capital (Doc. 42).

All matters are ripe for review.

## II.    LEGAL STANDARD

### Rule 12(b)(2)

The party seeking to invoke the federal court's jurisdiction bears the burden of demonstrating personal jurisdiction. *Pebble Beach Company v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006); *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977).  When resolving a motion to dismiss under Rule 12(b)(2) on written materials, the court accepts uncontroverted facts in the complaint as true and resolves conflicts in affidavits in plaintiff's favor. *Mavrix Photo, Inc. v. Brand Technologies, Inc.,* 647 F.3d 1218, 1223 (9th Cir. 2011).  It is "well established that where the district court relies solely on affidavits and discovery materials, the plaintiff need only establish a prima facie case of jurisdiction." *Rano v. Sipa Press, Inc.,* 987 F.2d 580, 587 n. 3 (9th Cir. 1993).  Similarly, "when reviewing motions to dismiss" for lack of personal jurisdiction, the court "must 'accept all factual allegations [in] the complaint as

7

true and draw all reasonable inferences in favor of the nonmoving party.'" *See Western Center for Journalism v. Cederquist,* 235 F.3d 1153, 1154 (9th Cir. 2000) (quoting *TwoRivers v. Lewis,* 174 F.3d 987, 991 (9th Cir. 1999)).

While the court reviews motions to dismiss for lack of personal jurisdiction in the light most favorable to the non-moving party, "when there is a conflict between the complaint and an affidavit, plaintiff cannot rely solely on the complaint to establish jurisdictional facts." *North American Lubricants Co. v. Terry,* 2012 WL 1108918, at *4 (E.D.Cal. Apr. 2, 2012) (citing *Data Disc, Inc.,* 557 F.2d at 1284).  In addition, the court need not consider merely conclusory claims, or legal conclusions in the complaint as establishing jurisdiction. *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 988 (E.D. Cal. 2012) (citing *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995)); *see also China Technology Global Corp. v. Fuller, Tubb, Pomeroy & Stokes,* 2005 WL 1513153, at *3 (N.D.Cal. June 27, 2005).  If the court considers only written materials, plaintiff must show facts, which if true, would establish personal jurisdiction over defendants. *Mattel, Inc. v. Greiner and Hausser GmbH,* 354 F.3d 857, 862 (9th Cir. 2003).

Questions of personal jurisdiction ultimately turn on concepts of due process.

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

*Int'l Shoe Co. v. State of Wash., Office of Unemployment,* 326 U.S. 310, 315 (1945) (internal quotations omitted).  When no federal statute authorizes personal jurisdiction, this Court must apply California law.  As California's long arm statute is coextensive with federal due process requirements, the jurisdictional analysis is the same. *Mavrix Photo Inc.,* 647 F.3d at1223; Cal.Civ.Proc.Code § 410.10.

//

//

**Rule 12(b)(6)**

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiff's claims. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). When determining whether a claim has been stated, the Court accepts as true all well-pleaded factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.,* 643 F.3d 681, 690 (9th Cir. 2011). However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn,* 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is a court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn,* 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

The Court first contemplates three threshold issues and the request for reconsideration by Defendant Eugene Wong, Arnold Huang, and Elizabeth Huang on the Magistrate Judge's personal jurisdiction determination before turning to Defendant Sentosa and WF Capital's (together, "the Corporate Defendants") motions to dismiss.

I.      **THRESHOLD ISSUES**

        **A.  Judicial Notice**

        Accompanying WF Capital's motion is a request that the Court, pursuant to Federal Rule of

Evidence 201, take judicial notice of numerous documents, specifically: (1) Certificate of Status for

Parker Dam Development, LLC from the State of California Secretary of State website (*see* Doc.

19, Ex. A); (2) Certificate of Status for Barusa, LLC from the State of California Secretary of State

website (*see Id.*, Ex. B); (3) the Second Forbearance Agreement (*see* Doc. 19-3, Ex. C), a document

referenced in (*see* Compl. ¶ 21), but not attached to the Complaint; (4) the First Amendment to the

Second Forbearance Agreement (*see* Doc. 19-3, Ex. D), which is referenced in (*see* Compl. ¶¶ 21-

22), but not attached to the Complaint; and, (5) the Proposed Third Forbearance Agreement (*see*

Doc. 19-3, Ex. E), which is referenced in (*see* Compl. 33, 56-58), but not attached to the Complaint,

and which was also recorded by William Barkett on June 13, 2014, against Defendant Sentosa's

property, albeit improperly.

        The Court agrees that it may take judicial notice of the above-listed documents. *See*

Fed.R.Evid. 201(b), (c).  It is well-established that courts may take judicial notice of court filings

and other matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741,

746 (9th Cir. 2006) (citing *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d

1360, 1364 (9th Cir. 1998).  The Court may also properly take judicial notice of "documents

referenced in a complaint" and "documents on which allegations in the [complaint] necessarily rely,

even if not expressly referenced in the [complaint]" where the authenticity of the documents are not

in dispute. *In re Calpine Corp. Sec. Litig.*, 288 F.Supp.2d 1054, 1076-77 (N.D. Cal. 2003).

        The two Certificates of Status from the Secretary of State are matters of public record and

their "accuracy cannot reasonably be questioned." *Id.*  The proposed Third Forbearance Agreement

is also a public record as it was recorded against Sentosa's property with the Kern County

Recorder's Office.  Additionally, the three agreements, *see* Doc. 19-3, Exs. C, D and E, are each specifically referenced and discussed in the Complaint. *See generally* Compl.  Although Plaintiffs failed to attach to the Complaint a copy of the purportedly breached contract, the proposed Third Forbearance Agreement is the subject of Plaintiffs' breach of contract claim. *See generally* Compl. Moreover, Plaintiffs plainly state in the Complaint that they have signed and executed the three agreements.  Thus the accuracy and authenticity of the documents are not in dispute.  The Court concludes that it may properly take notice of the documents as requested.

**B.  Capacity to Sue**

By their motions to dismiss, Defendants argue that the claims brought by Plaintiffs Parker Dam and Barusa must be dismissed without leave to amend because neither company has capacity to sue in California, as both companies are "suspended."  For their part, Plaintiffs acknowledge that Parker Dam and Barusa are suspended companies, but ask the Court to allow Plaintiffs time to revive the companies.  Plaintiffs cite no case law in support of their request.

The capacity of a corporation to sue or be sued is determined by the law of the state under which it was organized. *See* Fed. R. Civ. P. 17(b).  For all other entities, capacity to sue or be sued is determined by the law of the state in which the court is located. *Id.*  Parker Dam and Barusa are both California limited liability companies (*see* Compl. ¶¶ 3, 5), therefore the Court must look to the law of the state in which this court is located—California— to determine whether Parker Dam and Barusa have the capacity to sue. *Global BTG LLC v. Nat'l Air Cargo, Inc.,* No. CV 11-1657 RSWL JCGX, 2011 WL 2672337, at *1 (C.D. Cal. June 29, 2011).

According to California law, a company whose powers have been suspended for nonpayment of the corporate franchise tax lacks capacity to sue in California courts. *See* Cal. Rev. & Tax. Code § 23301; *see also S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 926 (9th Cir. 2014); *see also Bourhis v. Lord,* 56 Cal. 4th 320, 324 (2013) (citing *Reed v. Norman,* 48 Cal. 2d

338, 343 (1957)).  Looking to the California Secretary of State's Certificates of Status, Parker Dam

and Barusa, respectively, have a status of "FTB Suspended," meaning that the Franchise Tax Board

suspended the companies for failure to meet tax requirements. *See* Doc. 19, Ex. A, B.  Accordingly,

the Court concludes that neither Parker Dam nor Barusa have the capacity to sue in the instant

action filed in the Eastern District of California.  Consequently, the Court will dismiss the

Complaint as brought by Barusa and Parker Dam.  However, a corporation may bring an action

once its corporate powers are reinstated. *Traub Co. v. Coffee Break Service, Inc.,* 66 Cal. 2d 368,

371 (1967); *see also United States v. 2.61 Acres of Land, More or Less, Situated in Mariposa Cnty.,*

*State of Cal.*, 791 F.2d 666, 668 (9th Cir. 1985).

### C.  Request for Reconsideration of the Magistrate's Order on Personal Jurisdiction Construed as Objections to Findings and Recommendations.

The Magistrate previously contemplated jurisdiction regarding the Individual Defendants'

Motion to Quash Service of Summons for Lack of Personal Jurisdiction, filed October 29, 2014

(Doc. 1-4).  A court may refer such motions for a magistrate judge to issue findings and

recommendations.[3] 28 U.S.C. § 636(b)(1).  On January 6, 2015, the Magistrate Judge denied the

motions, finding that the Court may exercise personal jurisdiction over Defendants. *See* Doc. 33.

As a motion seeking to dismiss a complaint is a dispositive matter, the Court construes the

Magistrate Judge's Order (Doc. 33) as her Findings and Recommendations.  *See* 28 U.S.C. §

636(b)(1).

---

[3] As the motion relative to personal jurisdiction requested that the Complaint be dismissed, it would "have an effect similar to those motions considered dispositive," and is thus analogous to one of the eight motions that are excluded from magistrate judge authority to enter pretrial matters without the parties' consent. *Strong v. United States*, 57 F. Supp. 2d 908, 912 (N.D. Cal. 1999) (quoting *Maisonville v. F2 America, Inc.,* 902 F.2d 746, 748 (9th Cir. 1990)); *see also* 28 U.S.C. § 636(b)(1). The eight excepted motions are: "a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss the action." *See* 28 U.S.C. § 636(b)(1)(A).  In November 2014, the Individual Defendants declined to proceed before a magistrate judge. *See* Doc. 11.

If either party objects to any portion of a magistrate judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the magistrate judge's report. *See* 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.,* 656 F.2d 1309, 1313 (9th Cir. 1981).  By filing its request arguing factual and legal error in the Magistrate Judge's personal jurisdiction determination, the Individual Defendants timely filed objections. *See* Doc. 44.  Therefore, this Court reviews the issue of personal jurisdiction *de novo*. *See* 28 U.S.C. 636(b)(1)(C); *see, e.g., United States v. Bell*, 57 F. Supp. 2d 898, 901 (N.D. Cal. 1999) (finding that while the Ninth Circuit has not directly addressed the issue, several circuits have held that regardless of whether proceedings were referred under § 636(b)(1)(B) (specifying a report and recommendation) or § 636(b)(3) (authorizing referral of "additional duties"), the parties are entitled to *de novo* review by the district court).

The Magistrate Judge's Order only addressed personal jurisdiction as to the individual defendants.  However, corporate defendant, Sentosa, also raises personal jurisdiction in its motion to dismiss.  For purposes of judicial efficiency, the Court will address both the construed objections to the Magistrate's order (construed as Findings and Recommendations) as well as Defendant Sentosa's personal jurisdiction argument, in a single section below.

## II.   PERSONAL JURISDICTION[4]

The "constitutional touchstone" of personal jurisdiction is "whether the defendant purposefully established 'minimum contacts' in [the] forum State," and whether the plaintiff's claim arose out of those contacts. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985).  The Ninth Circuit has devised a three-part test for analyzing claims of personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby

---

[4] Plaintiffs do not assert that any Defendants' contacts with California are so systematic and continuous such that Defendants are subject to suit in California under the doctrine of general jurisdiction.

invoking the benefits and protects of its laws; (2) the claim must be one which arises out of or relates to defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice; i.e. it must be reasonable.

*Mavrix Photo,* 647 F.3d at 1227-28 (quoting *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004) (in turn quoting *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987))) (emphasis in original).

The first prong is that "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1205-06 (9th Cir. 2006) (en banc) (quoting *Schwarzenegger,* 374 F.3d at 802). The plaintiff bears the burden on this prong. *Schwarzenegger,* 374 F.3d at 802.

Generally, the "purposeful availment" analysis is used for cases sounding in contract while the "purposeful direction" analysis applies to cases sounding in tort. *Pebble Beach,* 453 F.3d at 1155; *see Richmond Technologies, Inc. v. Aumtech Business Solutions, Inc.,* 2011 WL 2607158 at *4 (N.D.Cal. July 1, 2011) (applying the purposeful availment test exclusively when the tort claims arose out of the contractual relationship between the parties). The Court observes that fraud generally sounds in tort and, when presented with a solitary fraud claim, usually proceeds with the three-part personal jurisdiction evaluation where the first prong is a "purposeful direction" analysis. *Mavrix Photo,* 647 F.3d at 1227-28; *Pebble Beach,* 453 F.3d at 1155.

The Court's inquiry into the appropriate first prong does not end there, however. Suits that include both a breach of contract claim and a fraud claim may "sound primarily in contract" when the alleged fraud is merely the representations in the contract that gave rise to the breach. *Boschetto v. Hansing,* 539 F.3d 1011, 1016 (9th Cir. 2008); *cf. CE Distribution, LLC. v. New Sensor Corp.,* 380 F.3d 1107 (9th Cir. 2004) (tort and contract claims involved different parties). The Ninth

14

Circuit has "typically analyzed cases that sound primarily in contract . . . under a 'purposeful availment' standard." *Boschetto,* 539 F.3d at 1016.

This case sounds primarily in contract. The alleged fraud arises out of "representations" that "Plaintiffs would have the right to develop and own [the Property] even after the foreclosure on the terms and conditions set forth in the Option Agreement and as verbally agreed by the parties," and that "whatever might be negotiated was subject to approval by a third party," while the alleged breach of contract excludes Plaintiffs from "the opportunity to reap the benefits of the ten years of effort to develop the Subject Property." Compl. ¶¶ 40, 41. In other words, the alleged fraud is merely the representation in the alleged contract that gave rise to the breach, therefore, purposeful availment analysis applies to the entire suit. *HK China Grp., Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp.*, 417 F. App'x 664, 666 (9th Cir. 2011) (applying purposeful availment standard to entire lawsuit where alleged fraud was representation in the contract that gave rise to breach) (citing *Boschetto,* 539 F.3d at 1016). Accordingly, it is the purposeful availment analysis that applies here.

The Court will address each Defendant in turn, as "[e]ach Defendants' contact with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984).

### A. Corporate Defendants

Corporate Defendants Sentosa and WF Capital both move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. *See* Docs. 9, 19.

For their part, Plaintiffs contend that the Corporate Defendants purposefully availed themselves of laws and privileges of conducting activities in the forum by entering the disputed agreement. Plaintiffs' basis for exercising personal jurisdiction over the Corporate Defendants is the alleged contract between Plaintiffs and Defendant Sentosa.

However, an out-of-state party does not purposefully avail itself of a forum merely by entering into a contract with a forum resident. *Burger King Corp.,* 471 U.S. at 478.  Instead, a court evaluates "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine purposeful availment. *Id.* at 479.

### 1. **Sentosa Properties**

*Purposeful Availment*

Assuming, *arguendo*, that the alleged contract with Sentosa exists, the terms as alleged by Plaintiffs do not contemplate future consequences in California.  Instead, the terms indicate a choice of law provision for the State of Washington. *See* Doc. 19-3, Ex. E.  Facts in the Complaint further cut against Plaintiffs' argument for purposeful availment.  If, as Plaintiffs allege, Sentosa agreed to forbear on the loans and to give Plaintiffs an option to repurchase the Property, such terms do not purport to give Sentosa a role in the future development of the Property in California.  Rather, the alleged terms specifically limit or preclude Sentosa's future involvement with the Property.

In addition, few, if any, of the negotiations in this case occurred in California.  Sentosa, a Washington State limited liability company, has its principal places of business in Washington State. Compl. ¶ 6.  Plaintiffs do not contend that Sentosa executed a written contract in California, or executed the contract at all.  Instead, Plaintiffs contend that one or some of the Individual Defendants, residents of Washington, acting on behalf of Sentosa, made an oral agreement with Plaintiffs and did so from Washington. *Id.* ¶¶ 8-10.  Defendant Arnold Huang met with Plaintiff William Barkett perhaps once or twice in California, but this "temporary physical presence" is insufficient "to overcome the lack of any indicia of a calculated effort by [the defendant] to conduct business in California." *Fed. Deposit Ins. Corp. v. British-American Ins. Co.,* 828 F.2d 1439, 1443 (9th Cir. 1987).

16

Yet, the Barketts are residents of California and as such the judgment against them was recorded in California.  The judgment at issue here relates to the Property – in California – which was used as guarantee for the Loans on which the Barketts had defaulted.  It is undisputed that Sentosa purposefully purchased WF Capital's rights under the judgment recorded against the Barketts in California.  And that, as a result, Sentosa held the rights to potentially foreclose on the Property in California, and eventually did so. *See* Compl. ¶17, and, generally.  Whatever related harm Sentosa allegedly caused the California resident Plaintiffs, Sentosa knew or should have known it would likely be suffered in the forum state.  On that basis, the Court finds that Sentosa purposefully availed itself of the privilege of conducting activities in California, thereby invoking the benefits and protects of its laws.

*Whether Claims Stem from or Relate to Forum-Related Activities*

The instant claims involve the alleged formation of a contract related to the Property in California, a dispute about the propriety of the underlying nonjudicial foreclosure on the Property, and the parties' current rights relative to the Property.  The Property at issue is the same as that which secured the debt tied to the judgment, filed in California, which Sentosa purchased.  Therefore, the Court finds that the instant action arises out of and relates to forum-related activities.

*Reasonable*ness

In such circumstances, the Court finds that it is not unreasonable to hale Sentosa into a California court on claims related to the Property.  The Court concludes that the facts support exercise of personal jurisdiction over Sentosa.

**2.  WF Capital**

*Purposeful Availment*

In contrast, Plaintiffs fail to connect WF Capital to the subject of their claims.  Plaintiffs do not allege that WF Capital was involved in the relevant negotiations.  Further, there was no effort

whatsoever by Corporate Defendant WF Capital to be or become parties to the disputed agreement, nor was it actually a party. *See* Compl. ¶¶ 28, 33, 44; *see also* Doc. 19-3, Ex. E.  The Court also notes that WF Capital, for its part, did not reach out to the forum. To the contrary, seeking loans, it was Plaintiffs who reached out to WF Capital in Washington.

In sum, Defendant Sentosa's involvement with negotiations leading up to and the existence of the alleged Oral Third Forbearance Agreement is the extent of Plaintiffs' *prima facie* evidence to support its argument that the Court should exercise personal jurisdiction over both Corporate Defendants.  These allegations are sufficient to support exercising personal jurisdiction over Corporate Defendant Sentosa, but insufficient to impute that conduct to WF Capital where Plaintiffs have pleaded no facts showing that WF Capital participated in the activity about which they complain.  Plaintiffs fail to show that Defendants WF Capital negotiated with, entered into a contract with, had any actual course of dealing with Plaintiffs relative to the contract in dispute, or that WF Capital otherwise purposefully availed themselves of the forum.  Thus the Court concludes that Defendant WF Capital, a Washington corporation, lacks minimum contacts with California.

Due to the paucity of facts tying WF Capital to conduct in the forum relevant to Plaintiffs' claims, the Court does not have reason to exercise personal jurisdiction over WF Capital. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128-29 (9th Cir. 2010) (failing to plead any one of requisite elements is fatal to Plaintiff's attempt to exercise jurisdiction). Consequently, the Court need not reach the remaining prongs of the personal jurisdiction inquiry for WF Capital.

**B. Individual Defendants: Whether to Pierce the Corporate Veil**

The Court has determined, *supra*, that it may exercise personal jurisdiction over Sentosa. Because it is undisputed that the Individual Defendants' relevant conduct with the forum state arises out of their corporate activity with Sentosa, the Court turns to whether it is appropriate in

these circumstances to attribute Sentosa's corporate contact to its principals or agents. *See, e.g., Davis v. Metro Productions, Inc.,* 885 F.2d 515, 521 (9th Cir. 1998); *also see Calder,* 465 U.S. at 789-790.

The Individual Defendants are Eugene Wong, characterized by Plaintiffs as an attorney for both Sentosa and the Huangs; Arnold Huang, characterized as a "principal" of Sentosa; and Elizabeth Huang, also characterized as a "principal" of Sentosa. Compl. ¶¶ 8-10.  All are residents of the State of Washington and Plaintiffs do not allege personal ties to the forum outside of the corporate-related conduct. *Id.*

Plaintiffs argue in their Opposition to Individual Defendants' Motions to Quash and Dismiss Complaint for Lack of Jurisdiction that this Court may properly exercise personal jurisdiction over such Defendants on the basis of their relevant corporate activities within the forum.  *See* Doc. 29, p. 9-10.  Plaintiffs assert that the instant claims arise out of the Individual Defendants' contacts with California because "through" Eugene Wong and Arnold Huang, corporate Defendant Sentosa intentionally made misrepresentations and concealed information which it knew would cause harm to Plaintiffs in California by foreclosing on the Property, the result of which was a purposeful breach of the Oral Third Forbearance Agreement. Compl. ¶ 40.  Therefore, Plaintiffs argue, the individual corporate officers had legally sufficient minimal contacts with California to exercise jurisdiction over them for harm arising out of that conduct.

The Individual Defendants aver that their contact with California resulted from actions taken in their corporate rather than individual capacities and thus, they are protected from suit in California by the fiduciary-shield doctrine.  For all but one Individual Defendant, the Court agrees for the following reasons.

It is well-settled that jurisdiction over individual officers of a corporation does not automatically follow from jurisdiction over the corporate employer. *See, e.g., Davis,* 885 F.2d at

520 (nonresident officers are not subject to personal jurisdiction in the forum by their "mere association" with the "corporation that causes injury in the forum").  For a court to exercise personal jurisdiction over an individual corporate officer, the requirements of the applicable long-arm statute and due process must still be met.  To satisfy due process, an individual defendant must have sufficient "minimum contacts," in his or her *individual* capacity, with the litigation forum. *Calder,* 465 U.S. at 790; *see also Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 n. 13 (1984).  Absent sufficient individual contacts, there must be a compelling reason for the court to exercise its equitable powers to "pierce the corporate veil" and attribute the corporation's contacts to its officers in order for a court to assert jurisdiction over nonresident corporate officers.  A court may do so when the officers, acting in their official capacities, personally engaged in allegedly tortious acts expressly aimed at the litigation forum. *Davis,* 885 F.2d. at 521; *also see Calder,* 465 U.S. at 789-790.

The fiduciary-shield doctrine is a judicially created principle that precludes the exercise of personal jurisdiction over nonresident corporate agents who are acting in the forum state in their role as corporate agents. *Davis,* 885 F.2d at 521.  Consequently, the fact that a corporation is subject to personal jurisdiction does not necessarily mean that the corporation's nonresident officers, directors, agents, and employees are as well. *Colt Studio, Inc. v. Badpuppy Enter.,* 75 F.Supp.2d 1104, 1111 (C.D.Cal. 1999).

The corporate form may be ignored (1) where the corporation is the agent or alter ego of the individual defendant, *Flynt Distrib. Co. v. Harvey,* 734 F.2d 1389, 1393 (9th Cir. 1984), or (2) where a corporate officer or director authorizes, directs, or participates in tortious conduct, *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1021 (9th Cir. 1985).  Corporate officers and directors are personally liable for all torts in which they are the primary participant, notwithstanding that they were acting as an agent of the corporation. *Coastal Abstract Serv., Inc. v.*

20

*First Am. Title Ins. Co.,* 173 F.3d 725, 734 (9th Cir. 1999) (corporate officers cannot "hide behind the corporation where [the officer was] an actual participant in the tort").  But mere knowledge of the tortious conduct is not enough to hold a director or officer personally liable—there must be other "unreasonable participation" in the unlawful conduct by the individual. *See, e.g., PMC, Inc. v. Kadisha,* 78 Cal.App.4th 1368, 1389 (2000).

The Ninth Circuit noted that "[c]ases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct ... or the 'central figure' in the challenged corporate activity." *Davis,* 885 F.2d at 524; *Wolf Designs, Inc. v. DHR Co.,* 322 F.Supp.2d 1065, 1072 (C.D.Cal. 2004) (exercising personal jurisdiction where individual had "control of, and direct participation in the alleged activities.").

Accordingly, the dispositive issue here is whether the Individual Defendants were primary participants or a "guiding spirit" in the alleged unlawful conduct.

### 1. **Eugene Wong**

As the primary actor, Plaintiffs refer to "Defendants," apparently meaning Sentosa, and state that Sentosa acted "through" Wong.  Compl. ¶¶ 40-41.  However, relying on the implication that Wong is a controlling force in Sentosa is a conclusory statement unsupported by the record. More is required.  *See Iqbal,* 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  Plaintiffs do not differentiate between the Defendants, they do not assert that Wong had control over decisions, nor do they assert that he was a corporate officer.  Plaintiffs state that Wong was Sentosa's attorney and do not contend that Wong acted in any way other than for the benefit of Sentosa.  Finally, Plaintiffs do not allege that Wong was a guiding force.  Without more, the Court is not compelled to pierce the corporate veil to hold Sentosa's attorney personally liable. *See Davis,* 885 F.2d at 524 n. 10.

The Complaint must contain *facts* to plausibly suggest personal direction of the allegedly unlawful activities. *See id.* at 1951 (a complaint must "plausibly suggest an entitlement to relief.").  At this early stage the Court must resolve ambiguities in favor of the Plaintiffs, but, here, there are no such ambiguities to resolve.  The facts as presented in the Complaint are insufficient to interpret as specific conduct related to the underlying property dispute, and not enough to compel the Court to pierce the corporate veil and exercise personal jurisdiction over Wong in his personal capacity. *See, e.g., Davis*, 885 F.2d at 524; *Wolf Designs*, 322 F.Supp.2d at 1072.

### 2. **Arnold Huang**

Plaintiffs make the same generalized allegations against Huang as they do against Wong.  Like the allegations against Wong, Plaintiffs fail to attribute particular statements to Huang, or indeed, any Defendant.  The Court acknowledges, however, two important differences between the allegations against Wong and Huang: (1) that, unlike Wong, Huang is a "principal" for Sentosa, by which Plaintiffs apparently suggest he is a decision-maker or guiding force, and (2) unlike Wong, they allege Huang acted for personal benefit. *See* Compl. ¶¶ 8-10, 40-41.  By itself, Plaintiffs' statement that Huang acted as a "principal" is not enough.  But, when read as it must be in the light most favorable to the Plaintiff, the contentions that he was a corporate officer and had a primary role along with the allegation that he personally participated in unlawful conduct for his own benefit – when taken together – are sufficient *prima facie* evidence to suggest that Arnold Huang was a guiding force in the alleged unlawful conduct and it is therefore appropriate to exercise personal jurisdiction over him. *See, e.g., Coastal Abstract Serv., Inc.,* 173 F.3d at 734 (finding it appropriate to hold corporate officers personally liable for torts in which they are the primary participant, notwithstanding scope of their corporate role).  On that basis, the Court has a compelling reason to pierce the corporate veil and attribute Sentosa's corporate contact to its principal, Arnold Huang. *See, e.g., Davis,* 885 F.2d. at 521; *also see Calder,* 465 U.S. at 789-790.

### 3.  **Elizabeth Huang**

No such evidence exists to indicate that Elizabeth Huang participated in the conduct about which Plaintiffs complain.  Other than in the caption or by referring to the collective actions of "Defendants," the Complaint never mentions Elizabeth Huang.  The only sentence the Court finds in the Complaint which arguably references Elizabeth Wang states that "Plaintiffs understood at all times based on representations by Huangs [sic] and their counsel that Sentosa owned all of the rights under the various loans and agreements with full authority to make decisions and enter into agreements." Compl. ¶ 45.  But by this solitary statement Plaintiffs have not pleaded Elizabeth Huang's personal involvement or specific knowledge of the alleged unlawful acts.  Plaintiffs do not distinguish any specific conduct, independent action, or make any allegation that could be interpreted to imply that Elizabeth Huang was a "guiding force" relative to the causes of action.  Plaintiffs, at best, make an implicit but conclusory allegation that Elizabeth Huang is a corporate officer in control of Sentosa.  This absolutely lacks any factual support and is therefore insufficient, even at this early stage.[5]

---

[5] *See Roylance v. Carney*, No. 5:13-CV-04258-PSG, 2014 WL 1652440, at *4 (N.D. Cal. Apr. 23, 2014) (citing *Doe I v. Wal-Mart Stores, Inc.,* 572 F.3d 677, 683 (9th Cir. 2009)):

> Plaintiffs' allegations do not support the conclusion that Wal-Mart is Plaintiffs' employer. Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity.  We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (stating that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (internal quotation marks and alterations omitted); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (holding that the pleading requirements stated in *Twombly* apply in all civil cases); *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004) (stating that "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss").

In sum, after considering the record and taking the facts in the light most favorable to the Plaintiffs, the Court concludes they have set forth sufficient *prima facie* evidence to compel piercing Sentosa's corporate veil, but only as to Arnold Huang.  In contrast, the Court finds that the Complaint lacks sufficient evidence to compel such a determination as to Eugene Wong and Elizabeth Huang, and on that basis the Court concludes that it would be inappropriate to attribute Sentosa's contacts with California to such Defendants.  Accordingly, because Eugene Wong and Elizabeth Huang lack minimum contacts with California, they are not subject to personal jurisdiction in this Court.

## III.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Because the Court has determined that it may exercise personal jurisdiction over Corporate Defendant Sentosa, it therefore proceeds with analysis relative to Sentosa's motion to dismiss for failure to state a claim upon which relief can be granted.  Ultimately, taking the facts in the light most favorable to the Plaintiff, the Court concludes that the Complaint fails to state any plausible claim for relief.

### Claim One: Fraud

The Complaint first raises a claim for fraud.  Plaintiffs allege that Defendants made false statements regarding the nature of the Oral Third Forbearance Agreement. *See* Compl. ¶¶ 40, 41. This claim centers on a set of misrepresentations—namely, that  Defendants, "acting through Arnold Huang and Eugene Wong," had "repeatedly" assured Barkett "that there was no need to file a chapter proceeding, that the nonjudicial foreclosure would only take place so long as Plaintiffs had the Option to purchase [the Property] and only for the purpose of cleaning up the liens that were no longer valid, and that Plaintiffs would be given the opportunity to reap the benefits of the ten years of effort to develop [the Property]." *Id.* ¶ 40.  Based on those representations, "as early as [the First Forbearance Agreement] and continuously thereafter, the parties moved forward on that

assumption." *Id.*  Plaintiffs understood Defendants' representations to mean that Plaintiffs "would have the right to develop and own [the Property] even after the foreclosure on the terms and conditions set forth in [the Oral Third Forbearance Agreement] and as verbally agreed by the parties." *Id.* ¶ 40.

Defendant Sentosa's primary argument is that Plaintiffs' claim for fraud should be dismissed as insufficiently pled under Rule 9(b).

Common law elements of fraud are: (1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity; (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *City of Atascadero,* 68 Cal.App.4th at 481.

Plaintiffs' fraud claim fails under Rule 9(b).  Globally, and significantly in respect to the fraud allegations, the Complaint is long on conclusory statements and short on detail.  According to the Ninth Circuit, allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken,* 6 F.3d 666, 671 (9th Cir. 1993).  A pleading "is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Id.* at 671-72.  To state a viable fraud claim, "[t]he complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Id.* at 672.

First, because the Complaint is vague about timing, it is unclear whether the claim is time-barred.  Plaintiffs fail to indicate when the alleged fraudulent acts took place or when Plaintiffs became aware of the purported fraud.  Plaintiffs merely state that Defendants "repeatedly" made misleading and false statements. Compl. ¶¶ 25, 34.  Providing Defendants with adequate notice as

to the dates of the alleged fraudulent conduct is critical to a statute of limitations analysis, given that the statute of limitations on fraud claims is three years from the date of discovery of the facts constituting the fraud. *See* Cal.Civ.Proc.Code § 338(d).

Moreover, Plaintiffs' Complaint does not distinguish between the Defendants or attribute specific statements to any specific Defendants. By treating the Defendants as indistinguishable, Plaintiffs' Complaint fails to provide Defendants with sufficient notice as to the role of each Defendant in the alleged fraudulent scheme. *See Swartz v. KPMG, LLP,* 476 F.3d 756, 765 (9th Cir. 2007); *see also Castaneda v. Saxon Mortgage Servs., Inc.,* 687 F.Supp.2d 1191, 1199-1200 (E.D.Cal. 2009) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint must inform each defendant of his alleged participation in the fraud.").

Finally, to the extent Plaintiffs seeks to bring fraud claims based on generalized allegations in the Complaint, the Court finds that Plaintiffs have failed to state a claim for fraud based on these contentions. In particular, Plaintiffs allege that Defendants concealed from them "the existence of the third party and the requirement that the third party approve whatever decisions were made." *Id.* ¶ 42. Any effort to state a claim for fraud based on this misrepresentation would fail for lack of justifiable reliance, a necessary element of a claim sounding in fraud. *See Engalla v. Permanente Med. Grp., Inc.,* 15 Cal.4th 951, 974 (1997) ("The elements of fraud that will give rise to a tort action for deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e. to induce reliance; (d) *justifiable reliance*; and (e) resulting damage." (emphasis added) (internal quotation marks omitted)). Here, Plaintiffs merely imply that concealment of a third party's rights relative to the potential agreement played some role in convincing Plaintiffs to refrain from filing bankruptcy chapter proceedings for Wasco Investments. However, Plaintiffs fail to allege reliance on a *lack* of third-party interest when making their bankruptcy-related decisions. Indeed, the Complaint is silent on the materiality

of third-party approval of the parties' alleged Third Forbearance Agreement to the Plaintiffs' bankruptcy decisions.  Plaintiffs cannot impute their due diligence failings to Defendants where no fiduciary duty exists because Plaintiffs have pled no facts plausibly suggesting that any type of agency relationship existed between Sentosa or WF Capital, whether based on actual or apparent authority. *See, e.g., Sandry v. First Franklin Fin. Corp.,* 2011 WL 202285, at *3 (E.D.Cal. Jan. 20, 2011) (dismissing fraud claim against lender where allegations were directed to misdeeds of mortgage broker and conclusory allegations of agency were insufficient).  Absent reliance, the fraud claims based on Plaintiffs' conclusory argument must fail.

In sum, lack of specificity in relation to this point is fatal to Plaintiffs' fraud claim.  The Court concludes that Plaintiffs' fraud claim does not comply with Rule 9(b)'s heightened pleading requirements and must be dismissed.  Because it is at least possible Plaintiffs could cure the defects in a well-pleaded Complaint, the Court will grant leave to amend.  Counsel for Plaintiffs are cautioned that this will be the last opportunity to amend.  This court does not have the resources to review and write extensive orders on how to write, rewrite and submit pleadings. This order gives the proper direction for the last time.

### Claim Three: Breach of Contract[6]

Plaintiffs' third cause of action asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  In California, "[t]he standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Wall St. Network, Ltd. v. N.Y. Times Co.,* 164 Cal.App. 4th 1171, 1178 (2008).  Plaintiffs allege that they, along with representatives of Defendant Sentosa, entered into an oral agreement for a Third Forbearance Agreement in April 2014, wherein Sentosa agreed to give Plaintiffs the option to repurchase the

---

[6] The Court will last address Plaintiffs' second cause of action.

Property post-nonjudicial foreclosure. Compl. ¶ 28, 29, 33, 34.  Plaintiffs further allege that the essential terms of this oral agreement were: (1) Defendant Sentosa would conduct a nonjudicial foreclosure of the second-position lien in order to eliminate any of the liens junior to it; (2) in exchange for the nonjudicial foreclosure, Sentosa would grant Plaintiffs an option to repurchase the Property for a specified price after the nonjudicial foreclosure; (3) no foreclosure would take place until the repurchase option was in place; and, (4) Sentosa permitted Plaintiffs to retain future rights to "process the development," with no termination date. *See* Compl. ¶ 28.

The Court finds that this claim is barred by California's statute of frauds, which requires that any agreement "that by its terms is not to be performed within a year from the making thereof" be in writing in order to be enforceable. Cal. Civ.Code § 1624(a)(1); *see also, e.g.,Rossberg v. Bank of Am., N.A.,* 219 Cal. App. 4th 1481, 1503 (2013) (finding concededly oral agreement that fell within statute of frauds not enforceable).  The subject of the instant claim is the Oral Third Forbearance Agreement, the alleged terms of which the parties agree are memorialized in the draft agreement and which Plaintiffs plainly concede was executed *only by Plaintiffs*. *See* Doc. 19-3, Ex. D.  The proposed terms of the contract required Defendant Sentosa to complete a nonjudicial lien foreclosure process, and grant Plaintiffs a multiyear option to repurchase the Property and to retain future rights to develop the Property.  Taking these facts as described in Plaintiffs' Complaint, the terms were not to be completed within a year of entering the agreement.  Accordingly, the agreement comes within the statute of frauds and, therefore, was required to be in writing.

As Plaintiffs concede that the agreement was oral and no written agreement was executed by both parties, *see* Compl. ¶¶ 28, 33, 44, the Court concludes that Plaintiffs' breach of contract claim must be dismissed for failure to allege the existence of an enforceable contract.  The absence of a contract is also fatal to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. *See Justo v. Indymac Bancorp,* No. 09-1116, 2010 WL 623715, at *7 (C.D.Cal. Feb.

19, 2010) ("Because the alleged oral contract is unenforceable under the statute of frauds, Plaintiffs' breach of implied covenant claim fails with respect to that contract." (citing *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 683-84 (1988))).  New or additional facts would not change the undisputed facts now before the Court.  Accordingly, the Court must dismiss with prejudice Plaintiffs' third cause of action.

### Claim Two: Declaratory Relief

Plaintiffs' second cause of action, declaratory relief, alleges that an "actual controversy" exists between the parties as to their respective rights, obligations and duties with regard to the foreclosure based on the Oral Third Forbearance Agreement and the invalidity of the underlying foreclosure proceedings.

By the motions to dismiss, Defendants argue that Plaintiffs' declaratory relief claim fails because: (1) this Court lacks subject-matter jurisdiction insofar as Plaintiffs seek to redress alleged past wrongs in the underlying foreclosure action; (2) Plaintiffs do not have Article III standing because the basis of their claim is merely speculative future harm, consequently, the claim is not ripe; as well as additional substantive reasons, including (3) that Plaintiffs fail to properly allege any instrument pursuant to which Plaintiffs seek to have his rights or duties declared; (4) there is no actual controversy between the parties; and, (5) the other causes of action asserted in the Complaint are not viable.

Without reaching the substantive arguments, the Court notes that declaratory relief is not an independent cause of action, but a remedy. *See, e.g., O'Connor v. Wells Fargo, N.A.*, No. C-14-00211 DMR, 2014 WL 4802994, at *8-9 (N.D. Cal. Sept. 26, 2014) (finding that claim fails at the outset because "declaratory and injunctive relief are not causes of action; rather, they are remedies.") (quoting *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (dismissing declaratory judgment and injunctive relief causes of action but permitting

plaintiff to replead those remedies in the prayer for relief section because plaintiff might be able to "recover on these theories if he is able to show the existence of the elements necessary to plead his remaining claims that would entitle him to such relief")); *see also McDowell v. Watson,* 59 Cal.App.4th 1155, 1159 (1997) ("Injunctive relief is a remedy and not, in itself a cause of action") (internal quotation marks omitted); *see also Hayes v. Wells Fargo Bank, N.A.,* No. 13-CV-0420 KAW, 2013 WL 4117050 at *7 (N.D.Cal. Aug. 12, 2013) (same); *Benefield v. Bryco Funding, Inc.,* No. 14-cv-1459 PJH, 2014 WL 2604363 at *7 (N.D. Cal. June 10, 2014) (dismissing injunctive relief claim with prejudice because "injunctive relief is a remedy, not an independent cause of action"). Therefore, the Court concludes that Plaintiffs' cause of action necessarily fails.

The Court has determined, *supra,* that Plaintiffs have failed to assert cognizable claims for fraud or breach of contract and thus has dismissed all of Plaintiffs' substantive causes of action. Fatally, the declaratory relief claim is premised on these other flawed claims. Because Plaintiffs do not state a claim upon which relief can be granted, the Court will grant the motion to dismiss as to this claim. To the extent that such a remedy can be included where appropriate in the *prayer for relief* section of an amended complaint, Plaintiffs retain leave to amend.

## CONCLUSION AND ORDER

The Court concludes that Plaintiffs fail to meet their *prima facie* burden on the first prong of a personal jurisdiction analysis relative to Defendants WF Capital, Eugene Wong, and Elizabeth Huang, thus, the exercise of personal jurisdiction over such Defendants is not warranted. The Court, however, finds that it is appropriate to exercise personal jurisdiction over Arnold Huang.

Accordingly, **IT IS HEREBY ORDERED** that Defendant WF Capital's Motion to Dismiss under Federal Rule of Procedure 12(b)(2), (Doc. 19), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Complaint (Doc. 1) is **DIMISSED WITH PREJUDICE**, for lack of personal jurisdiction over Defendants WF Capital, Eugene Wong, and Elizabeth Huang.

In light of the dismissals, the Court **DIRECTS** the Clerk of Court to terminate WF Capital, Eugene Wong, and Elizabeth Huang as defendants.  Two Defendants and Does remain: Sentosa Properties LLC, Arnold Huang, and Does 1-25.

For the foregoing reasons, **IT IS FURTHER ORDERED** that Defendant Sentosa's Motion to Dismiss (Doc. 9) is **GRANTED**, as set forth below:

1) As a threshold matter, due to Plaintiffs Parker Dam Development and Barusa LLC's lack of capacity to sue in California, the Complaint (Doc. 1) as to such Plaintiffs is **DISMISSED WITHOUT PREJUDICE**.

2) Plaintiffs' first cause of action, Fraud, is **DISMISSED WITHOUT PREJUDICE** for failure to satisfy Rule 9(b).  Plaintiffs have leave to amend **only as to this claim** and shall serve any file any amended complaint within **thirty (30) days** of this Order.  Failure to do so will result in dismissal of this case in its entirety.

3) Due to its nature as a remedy not a cause of action, Plaintiffs' second cause of action for Declaratory Relief is **DISMISSED WITH PREJUDICE**, because amendment cannot cure the legal defect.

4) For failure to satisfy the statute of frauds, Plaintiffs' third cause of action, Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing, is **DISMISSED WITH PREJUDICE**, because amendment is futile.

As the Magistrate Judge's Order on venue did not contemplate the present circumstances where the only possible remaining claim is derivative of the prior nonjudicial foreclosure and/or enforcement of entry of judgment against Plaintiffs, Defendant Sentosa's "Request for Reconsideration by the District Court of the Magistrate Judge's Order Denying Sentosa's Motion for a Change of Venue," (Doc. 24) is **DISMISSED AS MOOT**.  **IT IS ALSO ORDERED** that, **within fifteen (15) days** from the date of service of this order, Plaintiffs shall file a written response to the Court showing cause why, if Plaintiff amends, such claims should not be transferred to the Southern District of California.  Plaintiffs' failure to comply with this order will result in the

dismissal of this action without further notice.  Parties are advised to note well that the Court has discretion to impose any and all sanctions authorized by statute or Rule or within the inherent power of the Court, including dismissal of an action, based on a party's failure to comply with a court order.  Fed. R. Civ. P. 11; Local Rule 110.

IT IS SO ORDERED.

Dated:   **February 5, 2015**          **/s/ Lawrence J. O'Neill**
                                        UNITED STATES DISTRICT JUDGE