# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BARKETT, MONTEREY FINANCIAL ADVISORS LLC; WASCO INVESTMENTS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SENTOSA PROPERTIES LLC; ARNOLD HUANG,<br><br>Defendants. | Case No. 1:14-CV-01698-LJO-JLT<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS.<br><br>(Docs. 55, 59) |

Before the Court in the above-styled and numbered cause of action are Defendants Sentosa Properties LLC's ("Sentosa") and Arnold Huang's ("Huang") Motion to Dismiss First Amended Complaint, filed March 26, 2015 (Doc. 59). The Court concludes that the matter is appropriate for determination without oral argument. *See* Local Rule 230(g). The Court, having considered the record in this case, the parties' briefing, and the relevant law, will grant Defendants' motion to dismiss Plaintiffs' First Amended Complaint ("FAC").

## I. BACKGROUND

### A. Allegations in the Operative Complaint

Plaintiff William Barkett ("Barkett") is an individual residing in San Diego County, California. *See* FAC, Doc. 55 ¶ 1. Plaintiff Monterey Financial Advisors LLC ("Monterey") is a California limited liability company with its principal place of business in San Diego County,

California. FAC ¶ 2. Plaintiff Wasco Investments LLC ("Wasco") is a California limited liability company with its principal place of business in Kern County, California. *Id.* ¶ 3.

Defendant Sentosa is a Washington State limited liability company, with its principal place of business in Washington State. *Id.* ¶ 4. Sentosa purports to be the successor in interest to the rights of WF Capital. *Id.* ¶ 7. WF Capital was a Washington corporation, with its principal place of business in Washington State. *Id.* WF Capital is no longer in business. *Id.* Individual Defendant Huang is a resident of the State of Washington and a principal of Sentosa. *Id.* ¶ 5.

Plaintiffs' sole remaining claim for fraud arises out of various loans by WF Capital to Plaintiff Wasco in order to purchase and develop real property ["the Property"] near the City of Wasco ("the City"). *See generally*, FAC. Plaintiffs contend that they are "owners of certain real property located in the County of Kern near Wasco." *Id.* ¶ 6. There are three loans involved. To purchase and develop the Property, Plaintiff Wasco sought and obtained two separate loans from WF Capital, both of which were secured by the Property and personally guaranteed by Barkett and his wife, Lisa Barkett (together, "the Barketts"). *Id*. ¶¶ 7-8.

Sometime in 2009, Plaintiff Wasco Investment agreed to sell a lot in the development to Wal-Mart. *Id.* ¶ 10. As part of this transaction, Plaintiffs paid "approximately $3 million" to WF Capital, Inc. in exchange for a release of any security interests in the portion of the property sold to Wal-Mart." *Id*. In addition, WF Capital was to release any security interest in the Property related to a deed of trust on other property located outside of Riverbank, California. *Id.* Despite accepting the $3 million, Plaintiffs contend that WF Capital "never released the . . . deed of trust as agreed." *Id.*

On or about June 16, 2009, Wasco entered into a Tax Sharing Agreement with the City as part of the Wal-Mart sale. *Id*. ¶ 17. The Agreement provided that Plaintiffs had the "right to receive as much as $750,000 in payments from sales tax revenues received by [the City]," because of Wal-Mart's presence in the Property. *Id.* The Tax Sharing Agreement was not part of any collateral for the loans made to Plaintiffs, and the Defendants held no interest in the Agreement. *Id.*

//

By September 2009, Plaintiffs had defaulted on all Loans, but instead of foreclosing on the Property after default, WF Capital entered into a forbearance agreement (the "First Forbearance Agreement" or "FFA") with the Plaintiffs. *Id*. ¶ 13. According to Plaintiffs, the First Forbearance Agreement related to "the obligations contended by WF Capital to be owed on [the Property]." *Id*. And, in reliance upon the FFA, Plaintiffs "continued with the efforts to obtain entitlements and to move forward with development of [the Property]." *Id*. Further, Plaintiffs contend that they "agreed to forgo the opportunity to file a bankruptcy petition to seek reorganization of the debt on [the Property] and to protect their investment." *Id*.

In 2010, despite the existing FFA, "WF Capital filed suit in Washington State against the Plaintiff Barkett and his wife Lisa Barkett seeking a judgment on the guarantees." *Id*. ¶ 14. A Washington court entered judgment against William and Lisa Barkett, "and the judgment was later filed in California." *Id*. Despite the adverse judgment, WF Capital "entered into a Second Forbearance Agreement," with Plaintiffs on June 26, 2011. *Id*. ¶ 15.

At some point soon after June 26, 2011, WF Capital assigned its beneficial interests in the loans to Sentosa. *Id.* ¶¶ 11, 15, 16. In June 2011, Plaintiffs allege the same parties, now also including Sentosa, "entered into an Amendment to the Second Forbearance Agreement" ("the Amendment"). *Id*. ¶ 15. Plaintiffs contend that "[t]he parties agreed [in the Amendment] to specific reduced amounts that were due under the terms of the various loan documents and judgments," and Plaintiffs again "agreed to refrain from seeking relief from the bankruptcy courts." *Id*. Plaintiffs assert that the Defendants agreed to "h[o]ld off execution on the judgment," and to forebear from any action "to foreclose on the Subject." *Id.*

Plaintiffs did not meet the Amendment's payment deadlines. *Id*. ¶ 16. Even so, "Defendant Sentosa took no action to enforce its judgments or to otherwise exercise any of its claimed rights under the loan documents or the judgments . . . because . . . the parties continued to work together toward the development of [the Property]." *Id*. Plaintiffs argue that as a result and with "Defendants['] knowledge," they spent significant sums on "consultants and engineers over the time period of 2007 to the present," and "were successful in getting approval of a tentative map and of selling one parcel to Wal-Mart." *Id*. ¶ 19.

3

By the terms of the original development agreement between the City and Plaintiffs, Plaintiffs were obligated "at [their] expense" to install off-site and on-site improvements, the cost of which was estimated at over $1.8 million for off-site improvements. *Id.* ¶ 21. In late summer of 2013, Plaintiffs engaged in negotiations with the City to find alternate ways to pay for the costs of improvements. *Id.* Defendants participated in the negotiations as the outcome affected Defendants' security interest. *Id.*

On or about October 29, 2013, Plaintiffs negotiated a deal with the City to transfer their interest in the Tax Sharing Agreement in exchange for the City to perform at its own expense some off-site developments. *Id.* ¶¶ 23-24. By the terms of the agreement, "Plaintiffs would receive a credit of $750,000 and the remaining amount of the site improvement costs would be borne by the City initially and allocated via assessment on [the Property]." *Id*. ¶ 24. During negotiations, however, the City "raised concerns . . . because there were a variety of liens on [the Property]," and it "requir[ed] subordinations from what appeared to be junior liens." *Id*. ¶ 26. Plaintiffs contend that Defendants Sentosa and Huang were aware of the negotiations with the City and "participated at all times in the negotiations and agreed to, and did, execute Subordination Agreements and Petitions and Waivers relating to the Assessment District that was created thereby." *Id*. ¶ 24.

Commencing in the late summer of 2013, Plaintiffs began discussions with Defendants about a further forbearance agreement. *Id.* ¶ 25. Subsequent to the City having expressed its concerns about the liens and subordination in late 2013, *see id.* ¶ 26, Plaintiffs, through Barkett, and Defendants, through Huang, discussed the idea of including a foreclosure provision in the further forbearance agreement. *Id.* ¶ 26. The provision would provide that Sentosa would foreclose to eliminate the junior liens and then Plaintiffs could repurchase the property. *Id.*

Plaintiffs emphasize that commencing in December of 2013 and ending on April 24, 2014, an agreement was reached where Defendants Sentosa and Huang verbally agreed to, although did not execute in writing, a third forbearance agreement ("the Oral Third Forbearance Agreement") precluding the conduct about which Plaintiffs complain. *Id*. ¶¶ 27, 37. Specifically, Plaintiffs allege that:

//

4

> Defendant Sentosa would conduct a foreclosure of [the Property], subordinate its interests to the assessment district and grant Plaintiffs the right to buy [the Property] at an agreed upon price.

*Id*. ¶ 27.

Plaintiffs further contend that, "at their request":

> On or about April 24, 2014, the parties had reached a final version of [the Oral Third Forbearance Agreement] that included the Option to Purchase granted to Plaintiff[s] Monterey Financial Advisors, LLC. . . . All of the terms were agreed to and Plaintiffs were prepared to execute the agreement and indicated to Defendants that they would do so. At the very last minute, Defendants attempted to change the terms of the initial payment and demanded that Plaintiffs agree to this new term. The new term was not part of [the Oral Third Forbearance Agreement].

*Id*. ¶ 37.

Contrary to courses of performance and previous representations of the Defendants, Plaintiffs allege that "Defendants proceeded to complete a nonjudicial foreclosure sale of [the Property] without any notice or warning to Plaintiffs." *Id*. ¶ 38.

**B. Procedural History**

Plaintiffs Barkett, Monterey Financial, Parker Dam, Wasco, and Barusa (collectively, "Plaintiffs") commenced this action on August 20, 2014, by filing a Complaint in the California Superior Court for the County of Kern against Defendants Sentosa, WF Capital, Wong, and the Huangs (collectively "Defendants"). *See generally*, Compl., Doc. 1. Plaintiffs assert that Defendants are liable for fraud and breach of contract, and seek declaratory relief, asking for a determination "that there is no longer any amounts owed on the loans or the judgments," (*id*. ¶¶ 23-28), and that "Plaintiffs hold an option to purchase [the Property]." *Id*. at 28.

On October 10, 2014, Specially Appearing Defendants Eugene Wong, Arnold Huang, and Elizabeth Huang (collectively, "the Individual Defendants") filed a Motion to Quash Service of Summons and Complaint for Lack of Personal Jurisdiction in California Superior Court for the County of Kern (Doc. 1-4, p. 38).

On October 29, 2014, Defendant Sentosa removed to this Court pursuant to the provisions of 28 U.S.C. Sections 1332(a) and 1441(b), asserting that the parties are diverse and the matter in controversy exceeds the sum of $75,000. *See* Docs. 1-2. On October 30, 2014, Sentosa next filed a motion for change of venue on the basis of previous litigation related to enforcing the judgment

against the Plaintiffs in the Southern District of California, making that district the proper venue for adjudication of Plaintiffs' claims (Doc. 3).

On December 5, 2014, the Magistrate Judge denied Defendant Sentosa's Motion for a Change of Venue (Doc. 21).

On December 18, 2014, Defendant Sentosa requested reconsideration of an Order from the Magistrate Judge as to change of venue (Doc. 24), which it subsequently withdrew (Doc. 53).

Sentosa moved to dismiss the Complaint on November 5, 2014 (Doc. 9), and WF Capital followed on December 1, 2014 (Doc. 19).

On February 5, 2015, the Court granted Sentosa's motion to dismiss. (Doc. 52). The Court dismissed Defendants WF Capital, Eugene Wong, and Elizabeth Huang from the suit for lack of personal jurisdiction. *Id.* In addition, the Court dismissed without prejudice Plaintiffs Parker Dam Development and Barusa LLC due to a their incapacity to sue in California. *Id.* The remaining Defendants are Arnold Huang and Sentosa (together, "Defendants"), and the remaining Plaintiffs are William Barkett, Monterey Financial Advisors LLC, and Wasco Investments LLC (together, "Plaintiffs"). *Id.* The Court dismissed with prejudice for failure to state a claim in which relief can be granted all of the claims, except the claim for fraud which the Court dismissed but with leave to amend. *Id.*

On March 9, 2015 Plaintiffs filed the FAC, (Doc. 55), in which they maintain that Defendants are liable for fraud. *Id.* On March 26, 2015, Defendants moved to dismiss the FAC. (Doc. 59). On April 13, 2015, Plaintiffs filed their Opposition to the motion (Doc. 63), in which they objected to Defendants' contentions that Plaintiffs' claims were not well pleaded. On April 20, 2015, Defendants filed their reply. (Doc. 64).

The motion to dismiss was taken under submission on the papers pursuant to Local Rule 230(g).

## II.     LEGAL STANDARD

**Rule 12(b)(6)**

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When

6

determining whether a claim has been stated, the Court accepts as true all well-pleaded factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is a court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

**III.   DISCUSSION**

Defendants move to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) in light of their failure to cure the defects described by this Court in its February 5, 2015 Order (Doc. 52) dismissing Plaintiffs' complaint with leave to amend.

**A. Defendants' Motion to Dismiss Plaintiffs' Fraud Claim**

The Court granted without prejudice Defendants' prior motion to dismiss, finding that Plaintiffs' allegations lacked particularity and, as a result, the initial Complaint failed to meet the heightened pleading standards of Rule 9(b). However, the Court allowed Plaintiffs leave to amend to cure the following defects related to their cause of action for fraud: (1) vagueness about timing, for instance, the failure to indicate when the alleged fraudulent acts took place or when Plaintiffs became aware of them; (2) failure to distinguish between the Defendants or attribute specific statements to any specific Defendant; (3) failure to allege reliance on a lack of third-party interest;

7

and, (4) failure to allege sufficient facts to support the allegation of justifiable reliance in light of the absence of evidence that a fiduciary relationship existed between the parties.

By the instant motion, Defendants argue that Plaintiffs' FAC fails to cure the deficiencies in the original Complaint because the FAC likewise fails to meet the heightened pleading standards of Rule 9(b). Defendants contend that Plaintiffs cannot cure the defects about which they complain because even if Defendants made the statements during the negotiations as Plaintiffs' allege, Plaintiffs cannot show justifiable reliance on such statements when Defendants had no fiduciary duty, the parties were in adversarial negotiations, and the agreement had not been reduced to writing. On that basis, Defendants ask that the FAC be dismissed with prejudice for failure to state a claim upon which relief can be granted.

The elements of fraud are: (1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity; (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 481 (1998).

The Court addresses whether the FAC has cured the issues of particularity in light of the heightened pleading standards of Rule 9(b), which "requires a party to state with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged." *Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks omitted). Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). A pleading "is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Id.* at 671-72. In addition, "the plaintiff must set forth what is false or misleading about a statement, and why it is false." *Ebeid*, 616 F.3d at 998. An example from *In re GlenFed, Inc. Securities Litigation*, provides an illustration on the degree of particularity required by Rule 9(b):

> [A] plaintiff might allege that he brought a house from defendant, that defendant assured him that it was in perfect shape, and that in fact the house turned out to be built on a landfill, or in a highly irradiated area; plaintiff could simply set forth these facts (presumably along with a time and place), allege scienter in conclusory fashion, and be in compliance with Rule 9(b).

42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) *superseded on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297 (C.D. Cal. 1996).

### B. Vagueness about Alleged Misrepresentations

Plaintiffs' Complaint was vague as to the "who, what, where, when, and how" of the alleged misconduct. In their FAC, Plaintiffs provide some new details, but substantively make the same vague allegations about statements made by Defendants and concede that the matter relates to an oral rather than a written agreement not to foreclose. *See* FAC ¶ 45. Like the Complaint, the FAC vaguely asserts that Defendants, "acting through Arnold Huang," had "repeatedly" assured Plaintiff Barkett "that there was no need to file a chapter proceeding, that the nonjudicial foreclosure would only take place so long as Plaintiffs had the right thereof to purchase [the Property] and only for the purpose of cleaning up the liens that were no longer valid, and that Plaintiffs would be given the opportunity to reap the benefits of the ten years of effort to develop [the Property]." *Id.* But Plaintiffs newly indicate a time period in which the alleged misrepresentations occurred (between August/September 2013 through April 2014).[1] *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (time frame consisting of "last two quarters of 1993 and first quarter of 1994" specific enough to satisfy Rule 9(b)) *superseded on other grounds as stated in In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1091 (9th Cir. 2002). In addition, Plaintiffs identify Huang as the individual who made such assurances. Yet, Plaintiffs fail to identify *where* these assurances occurred (over the phone, in person, by correspondence). *See In re Stac Elecs. Secs. Litig.*, 89 F.3d 1399, 1410 (9th Cir. 1996) (broad assertions of place insufficient to fulfill heightened pleading standard). Also absent from the record is any information about how Defendants made these misrepresentations.

---

[1] Other added details in the FAC are simply irrelevant to the remaining claim: the newly added facts about the Tax Sharing Agreement with the City, negotiations between Wal-Mart, the City, and Plaintiffs, plans for the development of the Property, and information pertaining to the costs of development, are each wholly unrelated to the fraud claim. *See, generally,* FAC. These additional facts do nothing to justify Plaintiffs' reliance on the alleged misrepresentations, or address other deficiencies in the initial Complaint as outlined by the Court.

For these reasons, the Court concludes that Plaintiffs' FAC fails to meet the heightened pleading standards of Rule 9(b).

**C. Justifiable Reliance**

The Court next turns to the issue of justifiable reliance. Plaintiffs newly allege that "Sentosa and its principal Huang sometime in 2013 when discussions began" informed Plaintiffs, "through William Barkett and legal counsel," that "Defendant Sentosa had full authority to enter into any necessary agreements with Plaintiffs." *Id.* ¶ 41. In the FAC, Plaintiffs offer a conclusory statement that "[t]he lack of disclosure is very material as had it been disclosed, Plaintiffs would have simply filed for protection under the bankruptcy code and submitted a plan of reorganization." *Id.* However, nothing in this conclusory allegation has changed Plaintiffs' *justification* for their reliance. The Court again finds that Plaintiffs do not allege in the FAC that they *justifiably* relied on a lack of third party involvement relative to their bankruptcy decisions.

Throughout the parties' negotiations process for the Oral Third Forbearance Agreement, Plaintiffs were represented by counsel. *See* FAC ¶¶ 27-28, 31. This Court agrees with Defendants and those courts that have held that sophisticated parties represented by counsel are unjustified relying on misrepresentations made during the negotiations process. *See Facebook, Inc. v. ConnectU, Inc.*, No. C 07-01389, 2008 WL 8820476 at *5 (N.D. Cal. June 25, 2008) ("Where a party is represented by counsel, or where the alleged misrepresentation was made by an adversary during course of negotiations, courts have held that reliance is unjustifiable."); *Scognamillo v. Credit Suisse First Boston LLC*, No. C03-2061, 2005 WL 2045807 at *23 (N.D. Cal. Aug 25, 2005) (holding as a matter of law that reliance on a representation by adversary in execution of merger agreement was unjustifiable where parties were represented by counsel during the negotiations process); *Willhelm*, 186 Cal. App. 3d at 1332 (holding that the fraud claim failed because plaintiff was represented by counsel at the time of the allegedly fraudulent statement, and it was not "reasonable for [plaintiff] to accept [defendant's] representations as an adversary without an independent inquiry").

//

//

The Court concludes that under these circumstances, Plaintiffs cannot demonstrate justifiable reliance on misrepresentations made during negotiations for the alleged verbal contract. Absent justifiable reliance, the fraud claim necessarily fails.

**D. Fiduciary Duty**

In an alternate theory of justifiable reliance, Plaintiffs for the first time in the FAC assert that the parties were "joint venturers" in the underlying property development, and, out of this is born the Defendants' fiduciary duty to Plaintiffs. FAC ¶ 36. "By early 2014," Plaintiffs contend that they were "working as joint venturers in the development of [the Property]," with Defendants. *Id.* Plaintiffs contend that "[a]s such, both sides had a fiduciary obligation to keep the other side fully and completely informed of the status of the matter and their respective intentions." *Id.* Plaintiffs represent that they borrowed money from Defendants and used as security the Property upon which Defendants had the right to foreclose.

Under California law, "[c]onstructive fraud arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter on his prejudice." *Prakashpalan v. Engstrom, Lipscomb and Lack*, 233 Cal. App. 4th 1105, 1131 (2014) (internal quotation marks omitted). The elements of constructive fraud are: "(1) a fiduciary or confidential relationship; (2) nondisclosure (breach of fiduciary duty); (3) intent to deceive, and (4) reliance and resulting injury (causation)." *Id.* One way in which a fiduciary relationship may arise is if parties are in a joint venture with one another. *See City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 390, 181 P.3d 142, 153 (2008) (fiduciary relationship created "by operation of law" between participants of a joint venture).

The elements necessary for the creation of a joint venture are: "(1) a joint interest in a common business; (2) an understanding to share profits and losses; and (3) a right to joint control." *Nichols v. Greenpoint Mrtg. Funding, Inc.*, No. SA CV 08-750, 2008 WL 3891126, at *4 (*C.D. Cal. Aug. 19, 2008*). Further, "conclusory allegation[s] of a joint venture [are] plainly insufficient." *Id.*

Plaintiffs' assertion that the parties were "joint venturers" is a legal conclusion unsupported by facts. Deferring to Plaintiffs' facts, the relationship between Plaintiffs and Defendants was that of borrower and lender. Plaintiffs emphasize that Defendants' interest in the Property was as a

security for the loans granted to Plaintiff, and fail to proffer evidence to substantiate their legal conclusion about being "joint ventures." Saying it does not make it so. Notwithstanding some new details in the FAC, Plaintiffs repeat but do not meaningfully expand on the assertion made in their complaint that they justifiably relied on the alleged misrepresentations, "as early as [the First Forbearance Agreement] and continuously thereafter, the parties moved forward on that assumption." *Id*. Such allegations fail to satisfy even the first element of a joint venture. As Plaintiffs do not suggest any other theory of fiduciary relationship, a necessary element of constructive fraud, and they fail to assert facts to support justifiable reliance, a necessary element of a fraud claim, the cause of action cannot survive Defendants' motion to dismiss for failure to state a claim upon which relief can be granted.

## IV.   CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that Plaintiffs' FAC fails to cure the defects about which Defendants complain. The Court concludes that taking the facts in the light most favorable to the Plaintiff, the FAC does not meet with Rule 9(b)'s heightened pleading requirements and fails to state any plausible claim for relief. Specifically, Plaintiffs fail to support the legal conclusion that they justifiably relied on Defendants' alleged statements made during negotiations where no written agreement exists and where no fiduciary relationship between the parties exists. As the Court in its February 2015 Order specifically cautioned Plaintiffs it would, in these circumstances, dismiss the sole remaining claim for fraud without leave to amend. *See Barkett v. Sentosa Properties LLC*, 1:14-CV-01698-LJO, 2015 WL 502319, at *17 (E.D. Cal. Feb. 5, 2015). Because the FAC fails to state a claim for relief that is plausible on its face and Plaintiffs were previously given leave to amend to correct the deficiencies in the complaint, and failed to do so, the Court finds that further leave to amend would be futile.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 59) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs William Barkett, Monterey Financial Advisors LLC and Wasco Investments LLC's claim against Defendants Sentosa Properties LLC and Arnold Huang is **DISMISSED WITH PREJUDICE.**

As this ruling addresses all remaining claims in the case, the Clerk of Court is **DIRECTED** to **CLOSE** the case.

IT IS SO ORDERED.

    Dated: __**June 15, 2015**__            __/s/ Lawrence J. O'Neill__
                                                          UNITED STATES DISTRICT JUDGE